IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02521-PAB-KAS

CHRISTOPHER RYAN DIMICK, individually,

      Plaintiff,

   v.

    PAM BONDI, (DOJ) United States Attorney General, United States Department of
Justice, acting in her official capacity,
    TULSI GABBARD, (DNI) Director of National Intelligence, acting in her official
capacity,
    DAN HOLSTEAD, Acting Director of the National Counterterrorism Center, acting
in his official capacity,
    REBECCA RICHARDS, (ODNI) Chief, Civil Liberties, Privacy, and Transparency
Officer, acting in her official capacity, also known as Becky,
    KRISTEN CLARKE, (DOJ) Assistant U.S. Attorney General of the Justice
Department's Civil Rights Division, acting in her official capacity,
    J. BISHOP GREWELL, (DOJ) Acting United States Attorney for the District of
Colorado, acting in his official capacity,
    ZEYEN WU, (DOJ) Assistant U.S. Attorney in the U.S. Attorney's Office for the
District of Colorado, acting in his official capacity,
    TONYA TALLEY, (DOJ) Contractor for the U.S. Attorney's Office for the District of
Colorado, acting in his/her official capacity,
    TRINA A. HIGGINS, (DOJ) United States Attorney for the District of Utah, United
States Department of Justice, acting in her official capacity,
    KASH PATEL, (FBI) Director of the Federal Bureau of Investigation, acting in his
official capacity,
    MICHAEL H. GLASHEEN, (FBI) Director of the Terrorist Screening Center, Federal
Bureau of Investigation, acting in his official capacity,
    DAN BONGINO, (FBI) Deputy Director of the Federal Bureau of Investigation,
acting in his official capacity,
    SHOHINI SINHA, (FBI) special agent in charge, Utah, Federal Bureau of
Investigation, acting individually and in her official capacity,
    MARK D. MICHALEK, (FBI) special agent in charge, Denver, Federal Bureau of
Investigation, acting in his individual and official capacities,
    ALEX ZAPPE, (FBI) acting special agent in charge, Grand Junction, Federal
Bureau of Investigation, acting individually and in his official capacity,
    PAUL HAERTEL, (FBI) special agent in charge, Utah, Federal Bureau of
Investigation, acting in his individual and official capacities,
    SIX UNKNOWN NAMED FEDERAL AGENTS, (FBI) Federal Bureau of
Investigation in Colorado, Utah, and Washington D.C., acting in their individual and official
capacities,

1

KRISTI NOEM, (DHS) Secretary, United States Department of Homeland Security, acting in his official capacity,

KRISTIE CANEGALLO, (DHS) U.S. Deputy Secretary of Homeland Security, acting in her official capacity,

AVERY ALPHA, (DHS) Under Secretary of Homeland Security, acting in his official capacity,

SIX UNKNOWN NAMED FEDERAL AGENTS, (DHS) United States Department of Homeland Security in Colorado, Utah, and Washington D.C., acting in their individual capacities,

JARED POLIS, Governor; acting governor of Colorado, acting in his official capacity,

PHILLIP JACOB WEISER, Colorado Attorney General, Colorado Office of Attorney General, acting individually and in his official capacity,

DANIEL P. RUBINSTEIN, District Attorney, Mesa County District Attorney's Office, acting individually and in his official capacity,

MATT SMITH, Grand Junction Police Department, acting in his individual and official capacities,

KEVIN R. KLEIN, (DHSEM) Director, Colorado Division of Homeland Security & Emergency Management, acting individually and in his official capacity,

KEVIN MCELYEA, (CIAC) Director, Colorado Information Analysis Center, acting in his individual and official capacities,

MICKI TROST, (DHSEM) Strategic Communication Director/Public Information Officer (PIO), acting in her individual and official capacities,

SEAN DAVID REYES, Utah Attorney General, Office of the Attorney General, acting in his individual and official capacities,

JESS L. ANDERSON, (SIAC) Commissioner of Utah Department of Public Safety, acting individually and in his official capacity, and

TODD ROWELL, Mesa County Sheriff, Mesa County Sheriff's Office, in his individual and official capacities,

Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

## ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA

This matter is before the Court on Defendants Sean Reyes, Utah Attorney General, and Jess L. Anderson, Commissioner of Utah Department of Public Safety's, ("Utah State Defendants") **Motion to Dismiss Plaintiff's Complaint** [#17] and Defendants Pam Bondi, Tulsi Gabbard, Dan Holstead, Rebecca Richards, Kristen Clarke, J. Bishop Grewell, Zeyen Wu, Tonya Talley, Trina A. Higgins, Michael Glasheen, Shohini Sinha,

Mark D. Michalek, Alex Zappe, Paul Haertel, Kristi Noem, Kristie Canegallo, and Avery Alpha's ("Federal Defendants") **Motion to Dismiss** [#26].[1] Plaintiff filed Responses in opposition to the Motions [#25, 27, respectively] and Defendants filed Replies [#30, 36, respectively].

This matter is also before the Court on the Utah State Defendants' **Opposition to Plaintiff's Filing of His Second Amended Complaint** [#34] ("Motion to Strike"), which the Chief District Judge has construed as a motion and which essentially amounts to a motion to strike.

The Motions to Dismiss and the Motion to Strike have been referred to the undersigned. *See Orders Referring Motions* [#38, 41]. The Court has reviewed the briefing, the entire case file, and the applicable law.

For the following reasons, the Court **RECOMMENDS** that the Motions to Dismiss [#17, 26] and the Motion to Strike [#34] be **GRANTED**.

## I. Background

### A.    Factual Allegations

Plaintiff's alleged inclusion on the federal government's Terrorist Screening Dataset ("TSDS") watchlist is the impetus for this lawsuit. *Am. Compl.* [#9] at 4-5. In his Amended Complaint, Plaintiff states that between June 19, 2019, and May 20, 2024, "unknown federal and state officials" informed him of his inclusion on the TSDS watchlist

---

[1] The Federal Defendants also purport to file their Motion to Dismiss on behalf of Christopher Asher Wray, Director of the Federal Bureau of Investigation ("FBI"), and Paul Abbate, Deputy Director of the FBI. *Federal Defs' Motion to Dismiss* [#26] at 2. Plaintiff named each of these Defendants in their official capacity only. *Am. Compl.* [#9] at 2. Subsequent to the filing of Plaintiff's Amended Complaint, each Defendant left their respective offices. Thus, on March 3, 2025, pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted Kash Patel, FBI Director, and Dan Bongino, FBI Deputy Director, for these parties. *Minute Order* [#31] at 2-3.

and its subsets. *Id.* at 5, 15. He alleges that because of this inclusion, he has been the victim of harassment, surveillance, humiliation, and targeted violence. *Id.* at 4, 5, 19, 28, 33, 36. He refers generally to the difficulties people on this list experience when applying for employment, licenses, or benefits, accessing public benefits, or attempting to travel. *Id.* at 5, 20, 28. He also states that he has submitted numerous complaints and reports to multiple federal and state agencies and officials about ongoing civil rights violations and/or "preventable illegal criminal and unlawful conduct" by the same agencies and officials, but has received little, if any, response. *Id.* at 6-19.

By this action, Plaintiff asserts over fifteen claims[2] against Defendants collectively arising from his inclusion on the TSDS watchlist. *Id.* at 19-36. He seeks "injunctions that require the [ ] federal government to . . . provid[e] [Plaintiff] and other individuals on the TSDS and its subsets with a legal mechanism that gives them notice of why they are on the list, as well as a meaningful opportunity to contest their inclusion." *Id.* at 5. He also seeks a court order directing multiple state and federal agencies to answer claims filed against them and directing the FBI, Department of Homeland Security, Department of Justice, and Office of the Director of National Intelligence to update their allegedly false records pertaining to the TSDS watchlist. *Id.* at 36-37. Finally, Plaintiff seeks compensatory and punitive damages, as well as costs and fees associated with this lawsuit. *Id.* at 37.

---

[2]  Plaintiff lists fifteen claims as I-XV, but most include more than one legal claim. *Id.* at 19-36. The Amended Complaint [#9], however, is unclear as to whether Plaintiff intended each reference to the United States Constitution, federal statutes, federal regulations, state constitutions, or state statutes to raise a separate claim.

4

**B.       The Motions to Dismiss [#17, 26]**

The Utah State Defendants, in their individual and official capacities, seek to
dismiss Claims One (fraud) and Four (42 U.S.C. § 1983 claim for deprivation of rights
without due process and 42 U.S.C. § 1985 claim for conspiracy to deprive him of his rights
without due process), the only two claims Plaintiff asserts against them. *Utah State Defs'
Motion to Dismiss* [#17]. Defendants argue that (1) the Court does not have personal
jurisdiction over them; (2) Defendants in their official capacity are entitled to Eleventh
Amendment immunity against Plaintiff's claims seeking monetary damages; (3) Plaintiff
has failed to plead Defendants' personal participation as required under 42 U.S.C. § 1983;
and (4) Plaintiff failed to plead any factual allegations implicating Defendants. *Id.* at 10-
16.

The Federal Defendants seek dismissal of Plaintiff's lawsuit in its entirety. *Federal
Defs' Motion to Dismiss* [#26]. They argue that (1) Plaintiff lacks standing to bring his
claims; (2) the law underlying Claims Two, Three, Four, Five, and Fourteen does not
provide for private causes of action; (3) Defendants are immune from suit for Claims One
and Eight; (4) Plaintiff fails to state a claim under Claims One through Thirteen and
Fifteen; (5) Plaintiff failed to state a claim against Defendants Sinha, Michalek, Zappe,
and Haertel in their individual capacities because he did not assert any factual allegations
against them; (6) no *Bivens*[3] remedy exists for the alleged First, Fourth, Fifth, and Eighth
Amendment violations in Claims 9, 10, 11, and 14; and (7) Plaintiff improperly seeks
injunctive relief against Defendants in their individual capacities. *Id.* at 4-16.

---

[3] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## II.  Standards of Review

**A.    Rule 12(b)(2)**

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge a court's exercise of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). When, as here, the Court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (citing *Rambo*, 839 F.2d at 1416).

Federal Rule of Civil Procedure 4(k)(1)(A) permits federal courts to exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located;" thus, Rule 4(k)(1)(A) implicates Colorado's long-arm statute. Colorado's long-arm statute provides multiple bases for the exercise of personal jurisdiction, including: (1) the commission of a tortious act in Colorado; (2) transaction of business in Colorado; and (3) the ownership, use, or possession of any real property situated in this state. COLO. REV. STAT. § 13-1-124(1). Additionally, "[t]he Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (citing *Benton v.*

*Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (referencing *Mr. Steak, Inc. v. Dist. Ct.*, 574 P.2d 95, 96 (Colo. 1978))).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Supreme Court has distinguished between two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction would not violate "traditional conception[s] of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" test may be established by general jurisdiction or specific jurisdiction. *Otter Prods., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019).

A state court may exercise general jurisdiction over any claims against defendants who are "essentially at home" in the state; this is true when an individual is domiciled in the state. *Ford Motor Co.*, 592 U.S. at 352 (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919) (quotation marks omitted). In determining whether a forum State may assert specific jurisdiction over a nonresident defendant, the Court "focuses on the relations among the defendant, the forum[,] and the litigation." *Keeton v. Hustler Mag.,*

7

*Inc.*, 465 U.S. 770, 780 (1984). A plaintiff must establish: (1) the defendant "purposefully directed" his activities toward the forum state, and (2) the litigation is a result of injuries that "arise out of or relate to" the defendant's contacts with the forum state. *Burger King Corp.*, 471 U.S. at 472.

**B.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III.  Analysis

**A.    Background on the TSDS Watchlist**

Plaintiff's lawsuit depends entirely on his inclusion on the TSDS watchlist and the resulting consequences, if any. As a federal district court explained,

> The TSD[S] is "the U.S. government's consolidated terrorist watchlist." *Mokdad v. Lynch*, 804 F.3d 807, 810 (6th Cir. 2015). It is "developed and maintained by the Terrorist Screening Center (TSC), a multi-agency center that was created in 2003 and is administered by the Federal Bureau of Investigation (FBI), which in turn is part of the Department of Justice." *Beydoun v. Sessions*, 871 F.3d 459, 463 (6th Cir. 2017) (quoting *Mokdad*, 804 F.3d at 809). The information stored in the TSD[S] includes, among other things, "biographic and biometric data" regarding the individuals who have been listed in the database. *Elhady v. Kable*, 391 F.Supp.3d 562, 568 (E.D. Va. 2019).
>
> . . . .
>
> There are a number of "subset[s]" within the TSD[S], including the "No Fly List," the "Selectee List," and the "Expanded Selectee List." *El Ali v. Barr*, –— F.Supp.3d ——, 2020 WL 4051866, at *3 (D. Md. July 20, 2020). Individuals on the No Fly List "are prevented altogether from boarding an aircraft that flies through United States airspace." *Id.* Individuals on the Selectee List and the Expanded Selectee List are designated "for enhanced security screening due to the threat they may pose to civil aviation or national security." *Beydoun,* 871 F.3d at 462 (internal quotation marks omitted). *See also El Ali*, 2020 WL 4051866, at *3 (explaining that the individuals on the Selectee List and the Expanded Selectee List are "are routinely subjected to extra screening at airports").

*Salloum v. Kable*, No. 19-CV-13505, 2020 WL 7480549, at *1 (E.D. Mich. Dec. 18, 2020). As discussed below, Plaintiff identifies neither the TSDS subset on which he believes he is included nor any consequences he has personally suffered as a result. *See generally Am. Compl.* [#9].

B.    **Utah State Defendants**

1.    **Personal Jurisdiction**

The Utah State Defendants argue that Plaintiff has not alleged sufficient minimum contacts with Colorado to establish personal jurisdiction over them under either specific or general jurisdiction. *Utah State Defs' Motion to Dismiss* [#17], at 11-12. In his Amended Complaint, Plaintiff identifies Defendants Reyes and Anderson as Utah state officials, the Utah Attorney General and the Commissioner of the Utah Department of Public Safety. *Am. Compl.* [#9] at 3. In Claim One, Plaintiff's only allegation against Defendant Reyes is that Plaintiff filed a complaint/claim with him and/or his agents/employees, but they ignored the same "in the form of fraud, waste, and abuse." *Id.* at 19-20. In Claim Four, Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 and implies that Defendant Reyes deprived him of due process of law under the Colo. Const. Art. II, § XXV and conspired with others to do the same. *Id.* at 24-26. Plaintiff's reference to Defendant Anderson in the Amended Complaint is limited to listing him in the case caption. *Id.* at 3. He does not include any factual allegations against him and/or identify any actions on Defendant Anderson's part that could have violated Plaintiff's rights.

The Court finds that Plaintiff has not met his burden of establishing either general or specific personal jurisdiction over the Utah State Defendants. He has not shown that they were "at home" here. As Defendants note in their Motion, the fact that they are Utah state officials negates any inference that they are domiciled in Colorado. Further, Plaintiff failed to assert any allegations indicating that either Defendant "purposefully directed" activity towards Colorado. "Purposeful direction . . . requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed

its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there." *XMission, L.C. v. PureHealth Rsch.,* 105 F.4th 1300, 1308 (10th Cir. 2024) (internal quotation marks and alterations omitted). Failing to respond to a complaint Plaintiff filed in Utah does not constitute activity directed toward Colorado. Accordingly, the Court **recommends** the Utah State Defendants' Motion to Dismiss [#17] be **granted** and Plaintiff's claims against them be **dismissed without prejudice**. *See*, *e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1250 (10th Cir. 2011) (affirming dismissal without prejudice due to lack of personal jurisdiction over defendants).

### 2.    Eleventh Amendment Immunity

The Utah State Defendants also request dismissal of Plaintiff's claims against them in their official capacity seeking retrospective injunctive relief and/or monetary damages. *Utah State Defs' Motion to Dismiss* [#17] at 12-14. The Eleventh Amendment implicates a state's sovereign immunity. *Callahan v. Poppell*, 471 F.3d 1155, 1158-59 (10th Cir. 2006). It "generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). Likewise, the Eleventh Amendment "generally bars suits brought by individuals against state officials acting in their official capacities," but it "does not bar a suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law." *Harris v. Owens*, 264 F.3d 1282, 1289-90 (10th Cir. 2001). Thus, to the extent Plaintiff seeks retrospective injunctive and/or monetary damages from the Utah State Defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See, e.g., Amin v. Voigtsberger*, 560 F. App'x 780, 782-83 (10th Cir. 2014). Accordingly, the Court

**recommends** the Utah State Defendants' Motion to Dismiss [#17] be **granted** and Plaintiff's requests for retrospective injunctive and/or monetary damages from the Utah State Defendants in their official capacities be **dismissed without prejudice**. *See Rural Water Sewer & Solid Waste Mgmt. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) (stating that "a dismissal on sovereign immunity grounds . . . must be without prejudice").

###### 3.    Failure to State a Claim

Finally, the Utah State Defendants contend that Plaintiff's allegations fail to state a claim because he does not allege any unlawful actions by either individual. *Utah State Defs' Motion to Dismiss* [#17] at 14-16. They argue that Plaintiff "does not mention General Reyes, Mr. Anderson, or their respective offices anywhere in his Amended Complaint except mentioning that he brings this suit against them and he reported case numbers to their offices." *Id.* at 15.

"[T]o state a claim in federal court, a complaint must explain what each defendant did to him . . . ; when the defendant did it; how the defendant's action harmed him . . . ; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Defendant Reyes also notes that Plaintiff's failure to allege personal participation is fatal to his 42 U.S.C. § 1983 claim. The Court agrees. "Personal participation is an essential allegation in a [§] 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). "Because § 1983 [and § 1985] . . . [actions] are vehicles for imposing personal liability on government officials," courts must pay "careful attention to particulars, especially in lawsuits involving multiple defendants. '[I]t is particularly important' that plaintiffs 'make clear exactly *who* is alleged

to have done *what* to *whom*, . . . as distinguished from collective allegations.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)).

Plaintiff's factual allegations do not sufficiently identify any specific actions by or omissions of either Utah State defendant. Certainly, this is true of Defendant Reyes whom Plaintiff only mentions in his case caption. Plaintiff's allegations against Defendant Reyes are also vague. Within his list of complaints or reports that he purportedly filed with various agencies and officials, Plaintiff states, "All, if not most of these case numbers, report numbers, and allegations have been submitted to . . . [the] Utah Attorney General." [#9] at 15. Plaintiff does not describe the contents of these reports, when he made them and to whom, or how he was harmed by the lack of response. *Id.* at 15, 19-21. While Plaintiff is not required to plead every single fact in his case, "there are certain details the Plaintiff should know and could properly plead to satisfy the plausibility requirement" to state a claim under Rule 12(b)(6). *See Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (finding that the inadequate pleading rendered claims implausible and therefore affirming dismissal). Because Plaintiff failed to plead what each defendant did, when, and how such actions harmed him, the Court **recommends** that the Utah State Defendants' Motion to Dismiss [#17] be **granted** and that Plaintiff's claims be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that district court erred in dismissing with prejudice pro se plaintiff's complaint because dismissal with leave to amend is appropriate where the pleading defects can be corrected).

**C.    Federal Defendants**

The Federal Defendants argue that Plaintiff does not have standing to bring his claims because he has "fail[ed] to allege facts plausibly showing that [he] has been injured" in general and, more specifically, by them. *Federal Defs' Motion to Dismiss* [#26] at 4. "Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting U.S. CONST. art. III, § 2, cl. 1). "An essential component of a Case or Controversy is that the party bringing the action have standing." *Id.* "In general, a plaintiff has standing when '(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

Satisfaction of the "injury in fact" requirement differs depending on whether the plaintiff seeks prospective or retrospective relief. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)). To seek prospective relief, the plaintiff must show that he is suffering a continuing injury or that there is a "real and immediate threat of being injured in the future." *Id*. The threatened injury must be "certainly impending," not merely speculative. *Laidlaw*, 528 U.S. at 190. A claimed injury that depends on speculation or conjecture is beyond the bounds of a federal court's jurisdiction. A plaintiff seeking retrospective relief may satisfy the "injury in fact" requirement if he sufficiently alleges that he suffered a concrete and particularized past injury. *Tandy*, 380 F.3d at 1284.

14

Throughout his Amended Complaint, Plaintiff's assertions are limited to vague and conclusory statements of harm allegedly resulting from his placement on the TSDS list. For example, Plaintiff identifies the following injuries:

- "[I]nhibits his ability to enjoy the benefits of the U.S. constitution, Colorado and Utah constitutions," *Am. Compl.* [#9] at 5;

- "[O]n-going preventable illegal violations of state and federal law against [ ] Plaintiff[,] [i]ncluding ongoing known preventable state and federal civil rights violations by state and federal actors . . . . and [ ] sweeping consequences that alter nearly every aspect of Plaintiff's life," *id.* at 4, 6-8, 10-11;

- A wide range of harms, including being publicly humiliated, surveilled, and harassed when he travels throughout Colorado and Utah, *id.* at 4, 5, 33;

- "[C]ruel and unusual punishment" and/or "targeted violence" by state and/or federal agencies and officials causing stress, mental stress, and emotional distress, *id.* at 19, 33, 36;

- "[I]gnored and refused 'public services,' i.e. not providing a case number, a police report, failure to act, discrimination, not providing emergency services, not enforcing laws, not addressing citizen complaints, and discriminatory misconduct," *id.* at 20;

- Denied equality of justice, including a speedy remedy for injury to person, property, or character, *id.* at 21; and

- "Defendants with their targeted violence, ongoing state/federal violations of law, have caused, and continue to cause plaintiff unwanted stress, mental stress, emotional distress, and negligent infliction of emotional distress, intentional negligent infliction of emotional distress as documented," *id.* at 36.

These vague assertions illustrate Plaintiff's failure to allege a concrete and particularized injury or describe an action on the part of the Federal Defendants, or any Defendant, that caused his supposed harms.

Plaintiff responds to the Federal Defendants' standing argument by discussing harm other people have reportedly suffered from TSDS list placement. *Response* [#27]

at 26-33. He cites to a 2002 American Civil Liberties Union press release "[r]esponding to a front page story [ ] in the Wall Street Journal about FBI watch lists that finger innocent people but cannot be recalled or corrected . . . [and] point[ing] to the harm done to ordinary Americans[.]" *Id.* at 26 (citing ACLU, ACLU HIGHLIGHTS HARM TO REAL PEOPLE IN OUT-OF-CONTROL FBI WATCH LIST SYSTEM; SAYS PROGRAM EERILY SIMILAR TO RECENT PRIVACY INVASIVE PROPOSALS, https://www.aclu.org/press-releases/aclu-highlights-harm-real-people-out-control-fbi-watch-list-system-says-program) (last visited Aug. 12, 2025). He states, "The Journal story cites example after example of innocent citizens being labeled potential terrorist by the list and being unable to clear their names." *Id.* at 27. Plaintiff does not suggest the press release or underlying news article is in any way related to events he personally experienced. *Id.* at 26-27.

Similarly, Plaintiff relies on a 2019 American Constitution Society article that extensively discusses the experience of Muslims placed on one of the TSC's watchlists. *Id.* at 30-33 (citing AM. CONST. SOCIETY, COURT RECOGNIZES REPUTATIONAL HARM TO MUSLIMS ON TERRORIST WATCHLIST, https://www.acslaw.org/expertforum/court-recognizes-reputational-harm-to-muslims-on-terrorist-watchlist/) (last visited Aug. 12, 2025). Plaintiff notes the article's description of 23 Muslims' "accounts of humiliating and abusive treatment by federal agents in the Customs and Border Patrol and Transportation Security Administration." *Id.* at 31. Again, however, Plaintiff does not allege that he personally experienced the events others described in the article.

Plaintiff may fear experiencing any number of events because of his alleged placement on the TSDS watchlist. However, courts have repeatedly held that a plaintiff's potential fear that he *could* experience an event does not rise above mere speculation or

conjecture and is insufficient to provide standing to bring his claims. *See*, *e.g.*, *Kovac v. Wray,* 109 F.4th 331, 341-42 (5th Cir. 2024) (finding the plaintiffs lacked standing to bring claims based on TSDS watchlist inclusion because "[a]lthough it is possible the [p]laintiffs could be injured if their alleged placement on the Watchlist adversely affects them during a traffic stop, firearm purchase, or license application, they have not demonstrated that such injuries have occurred or are 'certainly impending.'" (citation and emphasis omitted)), *cert. denied sub nom. Kovac v. Patel,* 145 S. Ct. 1181 (2025); *Abdellatif v. U.S. Dep't of Homeland Sec.*, 109 F.4th 562, 568 (D.C. Cir. 2024) (noting the plaintiff's allegations that "the mere existence of inaccurate information in [the TSA's] database is insufficient to confer Article III standing."); *Bosnic v. Wray,* No. 3:17-CV-826-J-32JBT, 2018 WL 3651382, at *5 n.5 (M.D. Fla. July 10, 2018) (finding it was "unclear what injury, if any," the plaintiff was suffering from inclusion on the TSDS or No Fly List where he did not allege that "he has actually been subjected to enhanced security measures or that he has been prevented or delayed from traveling since he was removed from" the latter); *Jibreel v. Hock Seng Chin,* No. C 13-03470 LB, 2014 WL 12600278, at *7 (N.D. Cal. Apr. 17, 2014) (dismissing the plaintiff's due process claim arising from placement on the no-fly list because "most of the [d]efendants have nothing to do with the no-fly list [and the plaintiff] does not allege . . . that he tried to fly internationally, and he does not allege any facts that would allow the court to find it likely he is realistically threatened with future injury."), *report and recommendation adopted by*, 2014 WL 12617420 (N.D. Cal. May 5, 2014); *Mohamed v. Holder*, No. 1:11-CV-00050 AJT/TRJ, 2011 WL 3820711, at *7 (E.D. Va. Aug. 26, 2011) ("[T]he plaintiff generally alleges that he has been injured because the government's confirmation that he was placed on the No-Fly List means that the

government suspects plaintiff to be a terrorist, and that the government's determination 'encroaches upon [p]laintiff's reputational interests and interferes with his future personal and professional relationships.' These kinds of vague, non-specific harms are not sufficient.") (citation omitted).

Similar to the plaintiffs above, Plaintiff has not alleged that he suffered a concrete and particularized injury because of his alleged placement on the TSDS list. He does not specify any "sweeping consequences," nor does he provide an example of being harassed, surveilled, humiliated, the subject of targeted violence, or denied a public service. Instead, Plaintiff seemingly hypothesizes about events that could occur because of TSDS list placement. Accordingly, the Court **recommends** that the Federal Defendants' Motion to Dismiss [#26] be **granted** and that Plaintiff's claims be **dismissed without prejudice** because Plaintiff has not established Article III standing.[4] *See Heddlesten v. Van Dyck*, No. CIV-11-1352-F, 2012 WL 6629053, at *1 (W.D. Okla. Dec. 20, 2012) (dismissing without prejudice for lack of standing).

### D.    Utah State Defendant's Motion to Strike Plaintiff's Second Amended Complaint [#34]

Plaintiff initiated this action on September 12, 2025, with the filing of his original Complaint [#1]. On November 6, 2024, Plaintiff filed an Amended Complaint [#9]. On February 27, 2025, he filed a Second Amended Complaint [#28]. The Utah State Defendants request the Court "disregard," or strike, the Second Amended Complaint [#28]

---

[4] In light of this recommendation, it is unnecessary to address the remaining bases for Defendants' Motion to Dismiss [#26] at 8-16.

because Plaintiff failed to request leave of court before filing the same. *Motion to Strike* [#34] at 3-4.[5]

Federal Rule of Civil Procedure 15(a)(1) permits Plaintiff to amend his pleading "once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Rule 15(a)(2) provides that, in all other instances, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Plaintiff previously amended his Complaint as a matter of course under Rule 15(a)(1) by the filing of his Amended Complaint. *Am. Compl.* [#9]. Accordingly, Plaintiff was required to obtain leave of Court or the written consent of Defendants to further amend his pleadings.

Pro se status does not excuse the obligation of any litigant to comply with the same rules of procedure that govern other litigants. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). Plaintiff failed to either obtain Defendants' written consent or obtain leave of Court prior to filing his 89-page Second Amended Complaint. Thus, pursuant to Rule 15(a)(2), the Court **recommends** that the Utah State Defendant's Motion to Strike Plaintiff's Second Amended Complaint [#34] be **granted** and that Plaintiff's Second Amended Complaint [#28] be **stricken**.

---

[5] Defendants filed their Motion as an "Opposition to Plaintiff's Filing of his Second Amended Complaint." [#34]. Because they ask the Court to disregard the Second Amended Complaint, the Court construes it as a Motion to Strike.

## IV. Conclusion

IT IS HEREBY **RECOMMENDED** that the Utah State Defendants' Motion to Dismiss [#17] and the Federal Defendants' Motion to Dismiss [#26] be **GRANTED** and that Plaintiff's claims be **dismissed without prejudice**.

IT IS FURTHER **RECOMMENDED** that the Utah State Defendants' Motion to Strike Plaintiff's Second Amended Complaint [#34] be **GRANTED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 14, 2025          BY THE COURT:

Kathryn A. Starnella

20

United States Magistrate Judge